Case number 20-5378. Telematch, Inc. Appellant v. United States Department of Agriculture. Mr. Romano for the appellant. Mr. Walker for the appellate. Morning, Mr. Romano. We'll hear from you. Good morning and may it please the court. My name is Anand Romano and I am appellant. I'm counsel for the appellant, Telematch. From 2009 to 2019, the Department of Agriculture routinely granted Telematch's annual FOIA request for spreadsheet data about agricultural programs. That consistent 10-year practice stopped in 2019. The law did not change, the requests did not change, and even the department's own FOIA guidance did not change. The only thing that changed was the person in charge of processing Telematch's FOIA requests. The government now all of those years. It defends its decision to withhold entire spreadsheets of government data on the grounds that exemptions three and six of the FOIA prohibit it from disclosing just three data points contained in those spreadsheets. It claims that exemption three bars farm and track numbers that it creates and assigns to farmland. But exemption three does not apply because those labels, and they're just labels, are not geospatial information about agricultural land or operations. The government also argues that exemption six prohibits it from releasing the customer numbers contained in those spreadsheets. Customer numbers are numbers that it creates and assigns to the farmers that participate in the programs. But exemption six only protects things like medical records or personnel records that contain highly sensitive personal information. And in any event, release of the databases serves an important public purpose. Simply stated, neither FOIA exemption applies in this case. Moving to farm and track numbers first. They're simply not geospatial information about agricultural land or operations. Now exemption three of the FOIA, of course, prohibits the release of matters that are specifically exempted from disclosure by statute. And we don't dispute that there is a non-disclosure statute in this case. That non-disclosure statute is in Title VII of the United States Code, section 8791b2b. And there it says that the department shall not disclose any geospatial information about agricultural land or operations. So the question isn't whether there is a non-disclosure statute. The question is whether farm and track numbers fall within the boundaries of this statute. I have a question about that because you concede in your brief at pages 52 and 53 that farm numbers and track numbers quote can be tied to a specific physical location in quote, right? That's correct. They can be. Then why isn't that dispositive that these are geospatial, that it's geospatial information because the common definition of geospatial in any dictionary is information that relates to a geographical location or a particular location. So if it's that simple, then I don't understand what the controversy is here about farm numbers and track numbers being geospatial. Well, it's not that simple, Judge Wilkins, and a number of responses to that. What's important for the court is to determine the legal meaning of geospatial information about agricultural land and operations. Now the district court is, as you point out, relied solely on common usage dictionaries, and that can be helpful when there is no other legal meaning in the law. But it shouldn't have been used in the first instance, and it certainly should not have been used exclusively here. The United States Code has several sections that to other parts of the U.S. Code and definitions from those when those weren't incorporated by Congress here. I mean, Congress knows how to say geospatial information here in this title means the same thing as it does in Title 13, Section 1. There are a number of canons of statutory interpretation that are in play here, and Your Honor raises one, which is that true in the 1996 law and the 2018 law, it says geospatial data or information as used in this section. But there are other canons of statutory interpretation that are also in play here in peri materia, which means if Congress has defined something about a very specific matter, and in this case it's geospatial information, then we can look throughout the Code to see what Congress meant in the past in 1996 is a much more narrow definition than what the district court concluded here. It was not just any data that can be tied to land. It was data that was necessarily about the characteristics of the land or the location of the land. And so what we have here is we flip what Your Honor's statement was. If Congress wanted to make the definition different for the purposes of 8791, that is when Congress should have said we have a definition that's been on the books for almost 20 years, 20 years. Can you tell me a case where we have held or the Supreme Court has held that if Congress defines a term in a particular manner in a completely different title of the U.S. Code, we presume that they mean the same thing in a separate title of U.S. Code when they use that same term? I don't, Your Honor, have an authority on that, but the canons of statutory interpretation, I don't have it before me, though, that are in play are in peri materia, which is the canon of statutory interpretation that says if Congress has previously decided to define a term specifically in a very specific and technical manner previously, that that will be imported into the subsequent statute unless Congress has decided to expand or limit the definition as it was created before. It's title, subtitle, that basically relate to each other because they're all about the same kind of, they're all part of the same, you know, statutory scheme that's at issue, right? Don't use in peri to say, oh, in Title VII, they must mean the same thing that they said in Title XVIII. Well, I don't necessarily agree with that simply because the two statutes that are in play govern geospatial information. The 1996 statute was the statute that created the National Geospatial Intelligence Agency. It defines geospatial information in a limited manner. The 2018 Act that I refer to is the Geospatial Data Act, and the government, even in its papers, has agreed, has conceded that that Act actually applies to their analysis. So while maybe organizationally it was not placed in Title VII because it was the farm bill, it was part of a farm bill, an omnibus bill, it wasn't placed in Title VII. The subject matter is exactly the same. It's about geospatial information. All right, so Mr. Romano, what are the definitions in that other statute that you'd like us to take a look at, and why do you keep saying that they're more narrow? They're more narrow. So in the 1996 law, which is 10 U.S.C. 467, subsection 4, and I'll quote it, the term geospatial information means information that identifies the geographic location and characteristics of natural or constructed features and boundaries. So the district court, and there's a similar, I'll read the Geospatial Data Act. It says that geospatial data is information that is tied to a location on this earth, including by identifying the geographic location and characteristics of natural and constructed features and boundaries. So the district court's common usage definition was broad. It just said anything that, any data that can be associated with a particular plot of these legal definitions, it's more narrow because it's data associated with the land, but that data has to be about the characteristics of the land, the height, you know, whether there's water, or the location, or the boundaries of the land. That's not even what the statute says. You're talking about 43 U.S.C. 2801, right? For the Geospatial Data Act of 2018. The term geospatial data, that's what you just read, right? That's right. It means the information that is tied to a location on the earth, which is, that's the portion that the government cites, but it then goes on to say including by, but that doesn't mean that, and when you say including, it doesn't mean that it has to also identify that. It says, you know, it could say including, but not limited to. It could be read that way, your honor. But including doesn't mean that it has to have everything that follows after including. That's giving one example of information that is tied to a location on the earth. It could be read that way, your honor, and I agree with that, but what we have are two legal definitions that collide. And reading it that way would be consistent with the common usage in dictionary definitions, right? Well, but yes, but then what you have is basically an unspoken indefinite definition, and we know that in the context of Exemption 3, this court, as early as 1987, has said that Exemption 3 nondisclosure statutes must be read narrowly, and that's from the Association of Retired Railroad Workers versus the Railroad Workers. Mr. Romano, I asked you about the definition that you want to apply because I still am struggling to see why that doesn't apply here. We have a situation, my understanding, is that the USDA took maps, actual maps, which I think you concede, the aerial maps themselves are geospatial data, no? We concede that the maps themselves with the data on them would be, yes, that's correct. So the maps they took, they drew boundaries, they drew boundaries that corresponded to the edges of farms, to tracks within the farms, there are polyglons on this map, I understand, and they numbered those, all right? So I don't understand why that doesn't fit even within the definition that you are putting forward. We have boundaries that relate to locations on a map that you concede counts as a geospatial font of information. Your Honor, if we were asking for those maps and those polygons, then I would agree that 8791b2b applies, but that's not what we've asked for in the request. In fact, we withdrew that request after the multi-ag media, or I'm sorry, after the farm bill was passed. I understand, you're asking for a list of the numbers, but those numbers were why isn't geospatial information, even as you've defined it, broad enough to encompass that? It's not numbers that were just, that had never had any relationship to a map, or never had any relationship to location, right? They're only there because the USDA used a map, numbered the polygons, and then created a list. So what I don't understand is how that doesn't qualify because it So in a FOIA request, we're only analyzing the requested records and whether those records fall within the non-disclosure statute. If you look at a farm number or a track number, ABC, XYZ, that data, because that's the only data that we're asking for. We're not asking for the maps. We don't think we're entitled to them. We're not asking for the polygons. Let me give you, let me give you a hypothetical. You don't think the maps count because I hear you conceding that they qualify as geospatial data. Yes. Am I hypothetical? We have a map that someone, some agency has drawn, you know, circles, squares, whatnot. And then there's a legend, and the legend happens to be on the second page. And it says, you know, the squares are this but you're seeking the legend. Doesn't seem to me that that means the second page is not geospatial data. You're making the argument that just because we're asking for that the list that tells us what's going on in the map, we're outside of the realm of being excludable under this statute. I am making that argument, Your Honor, that the first of the first page of the map would be, would be properly withheld. But the second would not because it's not inherently geospatial. Another, I guess, counter hypothetical to that would be we all have driver's license. It says brown eyes on mine. It has all of your eye color on your licenses somewhere. There's a government database that could theoretically put together a map of where all the brown eyed people live in, say, Fairfax County, all the blue eyed people, and you could have a map. Are we now to say that the driver's license that has brown eyes and blue eyes on it, because those eyes... Yes, you've done it the opposite, right? My hypothetical posits that the data comes from the map and that makes all the difference. It's one thing to have a data set that exists independently and that we make a map out of it. Then maybe you say, oh, that data existed. All the driver's licenses were somewhere already. And so the fact that someone made a map doesn't turn that into geospatial. I'm saying the opposite, that we start with the map. The map is the thing. And we've made now a list of the features of the map. And for you to suggest that those features, just because they're on a list somewhere, aren't geospatial doesn't seem to make a lot of sense to me. Well, I would respectfully dispute the fact that the map comes first. It's a little bit of a chicken and the egg. But farm and track numbers can be divided. Transferred. They can move from plot to plot over time. And they often do. When there is a transfer, if one farmer has a plot of land and they buy their neighbor's farmer, the middle boundary goes away and one of the farm numbers goes away and it expands. So these are fungible. These are fungible labels. They're not about the land themselves. These are labels that the government uses. So while that map remains static, while that aerial photograph remains static because it is about the land or the boundaries that you can see on it are about the land, those labels can be modified. They can be moved. They can be eliminated. New ones can be created. It's not about the land. It's an administrative tool of convenience to label these agricultural plots of land. It's not about the characteristics. It's not about the location of the land. And in fact, a farm number can change. It's the land to which it is assigned. The farm number can move to a different plot of land and the characteristic, you know, farm number ABC number 123 is transferred down the road. Then there are different characteristics of that land. That's not to say that that land characteristics change. It's to say that the characteristics of that land change. It's just a label change. So you want a code, which as I understand it, is nothing but a pointer to some specific plot of land. Is that not right? Do I want a code? It's not to... The code is just USDA shorthand for whatever. Farmer Jones plot at seven degrees north and ten degrees west. That's what that... Correct. It is, but it is meaningless in terms of geolocating or geospatial if you don't have the seven degrees north or the location or the map. So it is... The reason it's important to our client, though, is its combination with farm numbers and those other types of... It's important to your client precisely because you can use other stuff to figure out to break the code and figure out the XYZ really means farmer Jones plot. Well, there's actually nothing in the record that that discusses farm and track numbers and government obviously has the burden to prove exemption three status. I see that I'm already far over my time. I haven't gotten to... We'll give you some more time because I want to hear from you about the exemption six argument. So it seems like your response to Judge Katz's question is like saying, well, if we request social security numbers of all of the applicants, that's not really personal information because if they just give us social security numbers without the names, we won't know whose social security numbers we're getting. We'll just have a list of social security numbers. But that doesn't change the fact that a social security number is personal information, does it? I think that the analogy to social security numbers fails because social security numbers are tied to any number of privacy type information. The customer numbers are used within a closed universe, a universe that we don't have access to other than the spreadsheets that we've received for 10 years in a row. And so it isn't tied to individual data. I can't do this, but hackers can take a social information. And in the exemption six analysis... Wait, before you do that, can I just ask you really quickly, what about addresses? Addresses, geospatial or not? No, they're not geospatial because they are... A good example is they're just labels of property. When you have an address, if you looked at 101 Cottage Street, you wouldn't know where that was. So what do you do? You type it into your phone. Your phone converts that using geospatial data, and then it provides you with a geospatial record of where it is. But the address by itself is simply a label. That label can be... The plot can be divided and 101 Cottage Street can turn into 101 and 103 Cottage Street, or they could rename the street. It's just a label. And a label, just a label, a naming label is not geospatial. It's not about the characteristics of the land or the location of the land. So no, I don't think... And the government incidentally agrees with that. And excuse me, it's not information about geospatial, something geospatial. Exactly. Why is it not information about geospatial something? Because it's not information about characteristics of the land or the location of the land. And the government agrees with this because one of the files that's responsive to our request is called the names and addresses file. And it identifies all of the residential addresses. They never have asserted exemption three status over addresses, over residential addresses. Now, we were the ones that identified a potential problem, not under exemption three, but with exemption six, although we don't think that there is one. But if the government thought that farm and track numbers were geospatial, then you would easily think that they would have concluded the same about names and addresses. But there's a requirement. Don't they have to give that information under some other statute? Which, yes. Well, they have to give names, addresses, and payment information, but not names and addresses by themselves. OK, but what about exemption six? I'm sorry to take you back to three. That's OK, Your Honor. So, well, I'm trying to think back to Judge Wilkins' question, but the customer numbers is not like social security number because a social security number in an exemption six analysis, we can look to derivative uses. What can someone do with this information once they look at it? The burden is very high, though, to prove that there is a derivative use. The government has to prove that there's a substantial probability that disclosure will cause interference with personal privacy. Government hasn't done that at all, hasn't explained it all with any level of detail. But even if we go back and we're back off of the customer number itself, exemption six only applies to medical records, to personnel records, or something like that. So you think of a FOIA request for DOJ personnel files, exemption six prohibits that, the disclosure of those personnel files or medical files. This court has precedents that indicate it can be a bit of information. It doesn't have to be a whole file. That's correct. That's correct. And a good example of that is someone wants to get a Medicare Medicaid payment to pay for their medical costs. You don't have to send the whole medical file over. You can send a bit of information. But these are big government-created administrative spreadsheets. That's not what exemption six is intended to cover. It's not government administrative files. And to the contrary, FOIA specifically targets these types of government so that you can ask to see what the government is up to. Well, there's no better way to see what the government is up to than to look at its administrative files, these files that they create in their course of governing, in their course of business, that demonstrate where the payments are going. What land is being conserved? How long is it being conserved? Is it being conserved the way it was supposed to be? Are the payments, are families splitting up so that they can receive subsidy caps beyond the statutory limit? So with the exemption six analysis, there are really just two main points. One, these aren't the types of files that Congress intended to protect. They're not personnel files. They're not medical files or even personnel or medical type highly sensitive information. Most of these farmers don't even know what their customer numbers are. They input it in if they have to log into the USDA websites, but it's not personal information. And to the extent that, you know, and even the district court agreed that customer numbers disclose nothing about an individual farmer to the public, including the farmer's identity. Do you dispute that the customer numbers can be used to identify farmers personally when combined with other publicly available information? I do dispute it only because I any type of evidence in there, in the government's papers in the district court or here that raises the substantial probability that there is interference with the privacy interest. I'm asking a different question. I thought that we had declarations that indicated that a customer number could be used in conjunction with other publicly available information to identify farmers. So we do have some evidence about that. And my question is, do you dispute that? And if so, where is your evidence that these customer numbers cannot be used in that way? So, so I don't dispute that there is a declaration that says that if you use some type of federal or state requirement records somewhere that there could be some type of privacy interest, but we don't know what, there's no evidence, no affidavit evidence, or no exemplary evidence of what those state records are, federal records are, no evidence of how they could be used, no evidence about how they could be, they can infringe on a privacy interest. And that certainly does not raise, it does not satisfy the very high burden of substantial probability that personal privacy could be threatened, especially when none of the records that we have can combine customer numbers with individual names. We have procedures in summary judgment for a reason. And at JA-277, we have the government's statement of undisputed fact. Paragraph 30 says that existing publicly available data can be connected with information from these FOIA requests, including the customer number, to form a comprehensive picture of these businesses. And that was supported by, you can, I'm probably not pronouncing that correctly, paragraph 14. You had an opportunity, if you chose, to say we dispute paragraph 30, and we don't think that that fact is true, and here's our counter affidavit. But you didn't do that, did you? No, we did not. So to accept the record as it is, that paragraph 30 is established for summary judgment purposes, right? We can, yes, that is correct, that the way that this is drafted is undisputed in our case. So it doesn't answer Judge Jackson's question about what the state of the evidence is here, in that there is evidence in the record that's undisputed that the customer number can be linked with publicly available data to form a comprehensive picture of these individual small businesses. So the statement here is established for purposes of summary judgment, but it's still the government's burden to satisfy, to prove that there is a substantial probability of a threatened privacy right. And this, even if established, doesn't even come close to meeting that standard. So even if you look at the amount of evidence, it's just scant evidence, vague evidence, really no examples at all. Had the government put in an example of, you take X record and you combine it with Y record, and this is the privacy record that interest that's revealed, and this is a problem because of... So Mr. Romano, you seem to be rejecting page 287 in the declaration of Philip Buchanan, paragraphs 11, 12, 13, where he goes into examples of the manner in which the farm and track numbers may be combined with other publicly available data to specifically identify a farmer track and the extent to which that is problematic for a particular farmer. You're saying it's not sufficient? I am saying it's not sufficient, that even though in the declaration itself, there are some other vague references to, well, if you just use the internet, you can figure this out. That's not sufficient to satisfy the substantial probability of a privacy interest being threatened. Whose privacy interest? How is there a privacy interest even involved when you can't link a customer number to a name? Whose privacy interest is threatened? We don't know. So if there's no way to know that citizen ABC XYZ, maybe it's good to say, well, we could threaten the privacy interest of that particular number, but we have no idea who in the country that is. So there's certainly no substantial probability that privacy concerns will be threatened in this case. So it's insufficient evidence to satisfy the very high burden that the government has on exemption six. Are you telling me that when we read this declaration in pages 287 and 288, the Judge Jackson referred to, that that's not saying that people can identify a person associated with a farmer track number or a customer ID? You're saying that this affidavit isn't telling us that? I'm saying that this, no, the affidavit says what it says. I'm saying that that is an insufficient amount of evidence by far to satisfy the very high burden that the government has to prove that there is a substantial probability that a privacy right will be threatened or that there'll be a revelation of some sort of, you know, isn't that the whole reason why you are seeking this information? I mean, why your client, your client is seeking data and information, these numbers that F, that, that, that USDA has precisely because my understanding was you want to try to identify the farms, figure out whether or not people are improperly being subsidized, figure out. So you have to know who the people are in order to do that, right? You say we want to know what the government is up to, but the way in which you know what the government is up to in the way that you're talking about is you identify who the people are, who are getting these monies, who are putting in the applications, and you then determine whether the government is doing what it's supposed to do. So I don't know how you can have it both ways, right? Well, so I think I have an answer for that, that no, it's, we're not intending to be, or the argument isn't, we'd like to be the private attorney general here. The idea is that we can determine statistically one way or another, what are the compliance rates? You don't need the individual names for that. How many, if there are 10,000 customer numbers out there, how many of those customer numbers are receiving subsidies in excess of the statutory caps? It's, it's more of a snapshot on the efficiency of the program, whether there's fraud, waste, and abuse in the program. It's not, we think we've nailed Farmer Jones over here because we've now linked this to the individual names. It is more of a public oversight argument where you can, you don't need, and nor do we want the individual names at all in this. It's the customer numbers as a percentage, say, of customer numbers, how many of them are abusing the system of the farm, and just one correction there too, though, farm and track numbers are not part of the exemption six analysis. So we put those aside. Those are just under the exemption three analysis. So, so we look at also compliance rates. How many customers are complying with the conservation requirements? If their, if their land is in conservation for 10 years, that land is transferred to a different customer number because they sold it. Does that landowner all of a sudden in year four, turn it into soybeans? Well, that would be a violation of the conservation rule. So, so it, and it's not about, it's not about identifying specific individuals in violation of certain rules. It's the aggregate, maybe statistical type review of that, the public, that, that, and that's what the public monitoring aspect of it is, and it is divorced from the individual names and addresses. Can I ask you a question about, about statutory interpretation questions? So talking about exemption three, you were looking at the limitation on disclosures at 7 U.S.C. 8791 sub B, and in, in the limitations are in 7 U.S.C. 8791 sub B, 2 A and B, and the geospatial information is, is in, is in B. But in 2 A, it says that the secretary is not supposed to disclose information that is provided, essentially the way I read this, by a farmer. In order to participate in the programs of the department. Correct. Isn't that an articulation by Congress, whether we agree that it's good policy or not, you know, we can debate that, but, but ultimately Congress sets policy, we don't. Isn't that an articulation by Congress, specifically, that they don't want, they don't intend to have disclosed information that these applicants for subsidies give to the government in order to participate in the program? And shouldn't that, even though, you know, we're, we're dealing with exemption six, which is this balancing, but shouldn't this prohibition and kind of Congress's view about non-disclosure of information that's provided by farmers to participate in the program, shouldn't that weigh in how we balance the public interest versus the privacy? If I understand your argument, or your, your question, your honor, it is your, you're still referring to customer numbers here. Yeah. And even though we are analyzing customer numbers under exemption six, your honor is suggesting, well, shouldn't we still look to non-disclosure statute subsection B2A to help inform the exemption six analysis? Yes. So maybe not surprisingly, my, my answer is no, it doesn't because customer numbers, and the reason the government hasn't argued this is customer numbers do not fall within subsection B2A. The government admits this on joint appendix 275, paragraph 22, they admit that the numbers are not submitted by farmers, the customer numbers. Now, remember, we're just talking about the customer numbers here. But I guess what the government does say is that you can use the customer numbers to link to other information that, um, that would give you kind of, um, information that, that tells you the, the financial of a particular farm, right? Well, yes, I think we have to be very careful about this derivative use argument because if we start, if we start looking to who the requester is and what the requester does with the information, and instead of the government adjudicating a FOIA request by looking at the records that are being requested, which is the proper analysis, they start adjudicating the requesters themselves. And you have a couple of different problems. You obviously have the potential for discriminatory conduct, but say, uh, we're, we're a for-profit company. Say you have a watchdog agency that asks for the exact same records. We don't get it because they think, well, you have the, the ability or the opportunity to link it with other things and, and all this other information would be unlocked. But the watchdog agency, the government says, well, you're the good guys. We'll give it to you. What's to say that that information won't be sold by the good guys to anybody else? So I think we have to be very, very careful. And that's why, uh, there's such a high burden for the government, substantial probability to invade a private right or privacy information. We have to be very careful about derivative use because you started adjudicating the requesters. And as a practical matter, I think that just, it really just takes away that the whole idea that FOIA is about looking to the government records to determine whether the records themselves are releasable to, to show the world what the government is up to. So I don't, I don't, I'm sorry, but thank you for, for you've answered my question, judge Katsas. Do you have any questions? Nothing else. All right. Thank you. A couple of minutes. Mr. Walker. Thank you, your honor. May it please the court. My name is Johnny Walker. I'm representing the department of agriculture. I would like to start with the topic under discussion just now about whether or not customer numbers can be linked to particular individuals. Now, what my friend on the other side says is that the government has not presented sufficient evidence in our declarations to show that to be true because it lacks any examples. We disagree with that, but that is all we have relied on. If the court, if the court will refer its attention to page 109 of the joint appendix, this is a declaration put into the record by the plaintiff by telematch. And in paragraph 59 of that declaration, they represent to be in possession of what they refer to as a name and address file. And what you'll see from that file is that it contains names, addresses, zip codes linked to a customer number. This is something they have, something they've put into the record and they know full well that there is information in the public domain in their possession that links customer numbers to specific individuals. And so the problem that we have is that what this case is, is essentially a redux of multi-ag media. You have essentially the same requester seeking essentially the same information about farms and farming practices from the USDA. Now in multi-ag media, this court conducted an exemption six balancing analysis and determined that the USDA must release to the requester information about farming operations that is tied to specific farmers and farms. But critically, what happened right after multi-ag media in response to that case is the United States Congress passed a statute, section 8791B, that's of critical importance in this case. And what that statute says is it essentially undertakes the exemption six balancing for itself. And it says that the USDA may continue to release payment information that is tied to specific names and addresses. And in this case, the USDA did release that information to telematch, but it is prohibited from releasing two types of information. One is geospatial information and the other is information about agricultural land operations or conservation practices, unless there is an exception. And this is the exception that matters because what my friend would like to pretend is that the information that's being protected by that statute are the numbers themselves, because those are not submitted by the farms and farmers that they don't fall under the statute. But the statute does prohibit us from releasing the substantive information about farming practices, unless that information is anonymized. That is that it is released, quote, without naming any individual owner, operator, or producer, or specific data gathering site. Because the customer numbers would name specific owners, operators, and producers, and because the farm and tract numbers would name specific farms and tracts, the USDA is compelled to withhold that information when it releases the substantive farm information. And I'd also like to correct a misstatement that my friend made during his opening, which is that the USDA withheld the full spreadsheets because they contain that information, and that is not the case. In the denial letters, they're all within the record here, but the USDA said to telematch is that it could have all of the substantive farm information that is in the USDA's files, but it would have to withhold only those three numbers in releasing that information. And maybe the case that telematch did not take the USDA up on that offer, but the USDA did not withhold the full spreadsheets with one exception, and that is the spreadsheet containing only names, addresses, and customer identification numbers. I'd also like to address one of the issues that was raised in the briefs in the appellant's reply brief. Now, we relied on this case Central Platt for the proposition that the, I believe it was the Eighth Circuit, upheld the denial of farm and tract numbers in that case. And in appellant's reply, they make the argument that in that case, the appellant requested the farm and tract numbers tied to individual images. There's actually nothing of the sort stated in either the district court opinion or the what the district court opinion makes clear is that the requester sought farm and tract numbers from the database that contains the images, but not necessarily the images itself. That's exactly what telematch is seeking here. They want the farm and tract numbers connected with all of the substantive farms and tracts that are connected with all the substantive farm data that is also in the records that they request so that they can tie all that information back to specific farms. But again, 8791's anonymizing requirement compels the USDA to withhold that information and make sure that those farms and tracts cannot be identified because they are data gathering. Can you help me understand why you're calling this an anonymizing requirement? The 8791b4 begins with nothing in this subsection affects the disclosure of information if the information has been transformed, I'm in B now, into a statistical or aggregate form without naming any. I guess I'm trying to wrap my mind around the language in relation to your argument that this is some kind of requirement to not release personally identifying information. Sure, your honor. It doesn't actually relate directly to our geospatial argument. Our geospatial argument is simply that when this court reads an undefined term in a statute like this, it uses the ordinary meaning. Not a highly technical meaning derived from Wikipedia articles, not meanings that are specific to other statutes and applications, the ordinary meaning. And we have three dictionary definitions to show that the ordinary meanings support our reading. So geospatial is somewhat, our argument about the geospatial information is aside from this comes into play is the argument that we made in the district court that has not been developed in this court that the farm and tract information, the farm and tract numbers are independently withheld as a result of this condition on disclosure because the government can only release the substantive farm information if it withholds information that would name the specific data gathering site. All right, but if that argument was not really raised here, then isn't it waived in some way? I'm struggling. It's not waived by us, your honor. The district court did not address it. An appellant did not raise it in their opening appeal, in their opening brief. We mentioned it in our brief simply to note that if the court were to rule against us on the geospatial argument, then it would have to remand to the district court as its usual practice to consider that argument. The court could consider it if it pleased for the first time in the appeal. But because neither appellant argued about it in the opening brief and because the district court did not address it, the normal practice would be to remand to address it in the district court in the first instance. The way that the disclosure exemption relates to our exemption six argument is, as I said, this statute is essentially a rebalancing of the public and private interest factors by Congress following this court's decision in multi-ag media. When plaintiff makes an argument that it needs the customer numbers tied to the farm data so that it can engage in these compliance and monitoring activities, our argument is simply that that's what multi-ag media found, but the landscape is very different now because we only release this information in a fully anonymized form. Plaintiff does not say that they can conduct any sort of monitoring activities with the data in a fully anonymized form, and to the extent that they can, it has been offered to them. The USDA said that they would provide all of this data without the customer numbers that would name the specific customers, as the USDA has shown and as plaintiff has admitted in JA 109. And I guess the question that I had of your friend on the other side is, shouldn't kind of the presence of this statute and how Congress altered the statutory scheme after multi-ag media, shouldn't that play a role in our exemption six balancing analysis? Yes, your honor, and I think the answer is exactly yes for the reasons that I mentioned. I mean, if you step back and look at the broader picture here, multi-ag media conducted the exemption six analysis in the way that plaintiff suggests, and Congress within a year stepped in with a statute intended specifically to abrogate that result. And as a result of that statute, a different result is compelled. Like I say, the government is prohibited from releasing any of the substantive information about farming practices that plaintiff wants. And it's important to note that plaintiff does not say that these substantive information about farming practices, conservation practices, and the land itself that it is seeking would not invade on the privacy of an individual if tied to an individual. Their sole argument is that the customer number, release of the customer numbers in the abstract would not invade on the privacy of that individual because it doesn't identify an individual. That's wrong in two respects. Number one is that it can be tied to an individual and they have the list to do it. And number two is because they haven't just in the abstract, they have requested customer numbers associated with the very type of substantive information about farming practices that they concede would invade on a person's personal privacy and that the USDA is prohibited from associating together by section 8791. So is that argument about whether there is a privacy interest or whether in the balance any privacy interest outweighs their need for the information or the public's interest in the information? It's really about the balancing, Your Honor, because I think they can see that there is a privacy interest in the farming practices here to the extent that they can be tied to an individual. They've never said otherwise. And indeed, the court in multi-ag media found that there was a substantial privacy interest. The balancing just came out the other way. It's important to note one of the files requested here is exactly the same file that was requested in multi-ag media. And all of the information is about farming practices, the land itself, conservation practices. So plaintiff puts up no argument that if we're able to tie the actual substantive information about agricultural operations to individuals, that that would be a substantial invasion of personal privacy. And it clearly can be tied to individuals. So the question is then how does the balancing come out? And because of this statute that was passed after multi-ag media with the specific intent to change the result of multi-ag media, that balancing comes out another way. All of the information that they would be able to get and that they have gotten is anonymized. And it shows only sort of the substantive information without any association to a particular customer. One other thing that I would like to get, I think my friend on the other side made an argument about that the USDA previously released addresses and that if these farm and tract numbers are geospatial, then why weren't addresses geospatial? And it has to do with how this information is maintained. So the geospatial limitation under B2B refers to geospatial information otherwise maintained by the secretary about agricultural land or operations for which information described in subparagraph A is provided. Now that would be actual farms and tracts, farm track numbers designate. The addresses that are in the file that was released to plaintiff and it appears at 109 in the joint appendix, those are the addresses of individuals who received subsidy payments from the USDA. So there's not a total, those addresses would not necessarily meet the other criteria of 2B which is that they'd be about agricultural land or operations. Can I just ask you back to the balancing point because I'm really a little struggling with the language in multimedia, multi-ag that seems to indicate that there is a strong public interest in information that could help evaluate how well the agency is determining eligibility, policing non-compliance, etc. So do you dispute that there is any public interest in that or are you just saying it's not been established a need for it here or what is your response to that? Yes, your honor. So I would say that there is some public interest there but Congress has rebalanced it in a significant way. So in multi-ag media what was requested and what the court ordered released was substantive information about farming practices that could be tied to farms and tracts and customers, tied to specific farms and farmers. And what Congress said following multi-ag media is you know what you can release information about farming operations but only if it meets the conditions of B4, one of which is that the disclosure of information must be transformed in a way that does not name any individual owner operator or producer and that does not name any specific data gathering site. So because of that the balancing is now that there's an interest in getting anonymized data about farming operations and that to the extent that monitoring can be done with that it is releasable. But the sole argument that telematch is making here because what it wants to do is identify those customers. But I feel like you're mixing exemptions, right? So to the extent that there is a statutory provision that prevents the government from releasing identifiable information in the way that you say came after multimedia, fine. Why isn't that an exemption three argument? If we're in exemption six world then I don't know that Congress's setting up the statute in the way that it did actually is responsive to my question about public interest. Isn't there a public interest in this information? Well like I said the only public interest that telematch has articulated is that it has a public interest and a need to have information about farm operations tied to customer numbers. And what we're saying is if that's your argument it fails under exemption six because you can't get farming information about farming operations tied to because the statute specifically prohibits us from releasing that the exemption three statute. So if you're going to make an exemption six argument there has to be another public interest at play here and they have not articulated one and that's because what they want are those customer numbers. The balance like I say that Congress has struck here is that we can release information statistical information about farming practices but not in a way that identifies the individual owner operator or producer and telematch can identify them. It has done so at JA 109. Unless the court has any further questions we ask that you please affirm the district court. All right Judge Katsas. I'm all set thanks. Judge Jackson. I'm all right thank you. All right we'll hear from Mr. Romano. We'll give him two minutes. Thank you Judge Wilkins. Just a few points. Judge Wilkins there's been some discussion here today about shouldn't we look at exemption three to help us inform the exemption six analysis in particular whether there is a privacy interest or public interest and and I hadn't thought about it until today but looking at 8791 if the court is inclined to do that then that bends in our favor as well because while while your honor was focusing on b2a we also have as Judge Jackson has has identified the very specific exception to all this which is that payment information and names and addresses must be released so that is congress saying this is not a privacy interest and in fact it's a public interest to make sure that we know what money is going to whom and so we have if if we wanted to use 8791 to inform the exemption six analysis and I haven't really done the research on that but if if we wanted to do that then the answer is actually the names and addresses and payments should be released and categorically that is not the type of privacy information that we want to protect because congress has said right here now you have to release it so that's the public interest and that should be what informs the exemption six analysis so that's the first point second the second point is is going back to the common usage sorry could you just give me the site to what you just referred to is that um before yes it is seven usc 8791 right b b four four okay a I have it thank you it doesn't affect the disclosure of payment information including information payment information and the names of addresses of recipients that's congress saying that's a public interest you have to release it and so that should inform exemption exemption six just quickly on the common usage my colleague said that these are consistent definitions no that's part of the problem with using the common usage definitions is that the two definitions relied upon by the district court are very widely in scope the first one is just relating to data associated with the location which is one it adopted but the second one says relating to resulting in computer visualizations and that's narrow so that's why i suggest that instead of using at the common starting at the common usage and maybe to the exclusion why don't we look to how this term was defined by congress in 1996 and then redefined in 1918 before your time goes out can i just direct you back to the other issue about public interest and yes um ask you to comment on consumer checkbook which seemed to suggest that you don't get to get information that has some privacy implications just to do a sort of free ranging um evaluation of government operations that there have to be some indication that there's actual mismanagement or fraud or something in order for the balance to come out in your way so comment on that sure i think generally speaking that that case kind of stands for the proposition of you can't be your you can't be the investigator for the government you're not in the ag's office you're not you're not the fbi that case is distinguishable in my view though because that case was about first and foremost it was exemption six type documents they were medical files like the type i referred to earlier medical or personnel files these are medical files these are files or at least medical information health information that's being submitted to the government for for payment and so that so you actually get over step one here which which isn't the case in here where we have these massive databases of administrative data all right so you're saying the privacy interests were greater in that case i understand what i'm asking absolutely what i'm asking is about the public interest they seem yes that a public interest that is unsupported by some indication of mismanagement or fraud if the public's interest is just i want to look at what the government is doing there has to be more than that in order to make that a cognizable public interest for the purpose of this balance right but why isn't that applicable to what we're doing here i i think if you look to the multi-ag media cases it explains why that that fraud waste and abuse is obviously prevalent in in agricultural programs or all government payment programs uh in in in general and also compliance rates there there are uh public interests that have previously been identified and and that in other cases though as well and so while i i took the district court's opinion to mean well we have to actually present evidence so that we can make this argument almost like a standing argument i think i think we've got to be careful because one it's a little circular we have this uh we we have this um evidence of fraud so let's see how much fraud there is i think that's a little circular but two we get into that derivative use issue again where now we're going to and you heard it from counsel well this is what they're doing this is what they're doing with the information then you're going to start discriminating amongst requesters and that's not what the foia is intended to do it's intended to look at the documents themselves look at the information in that documents themselves and with a blind eye to the world say yes that is releasable or it is not releasable and in this case the the farm and track number is going to fall with an exemption three and the customer's numbers there's been no showing of substantial probability substantial probability that there's a privacy interest and those public interests have been articulated in other case law which is which is why why you find them in our briefs as well your honor if there's no other questions we ask that the that this court uh uh reverse the judgment and require the united states department of agriculture to return to its former practice of disclosing in its entirety all right thank you we'll take the matter under advisement and we'll take a five-minute recess before calling the next case
judges: Wilkins, Katsas, Jackson